(No. 42116.—

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (Howard Lee Creinin, Appellant.)

*Opinion filed Dec. 19, 1969.—Rehearing denied Jan. 26, 1970.*

MITCHEM, HENDRIX & ALDEEN, of Urbana, (CHARLES W. HENDRIX, of counsel,) for appellant.

JAMES J. COSTELLO, JOHN W. METZGER, and WARREN H. GLOCKNER, all of Urbana, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Champaign County which reversed an award under the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138 *et seq.*) to the appellant, Howard Lee Creinin. The circuit court held that the finding of the Industrial Commission that appellant's injuries arose out of his employment with the appellee, the Board of Trustees of the University of Illinois, was contrary to the manifest weight of the evidence.

On January 1, 1967, the day of the injury, the appellant was a graduate student and teaching assistant at the University of Illinois. He held a part time appointment as a teaching assistant in the Department of Chemistry and was doing research work toward a Ph.D. degree in Food Science. His duties as a teaching assistant involved the preparation and grading of periodic examinations in an undergraduate course in chemistry and supervision of student laboratory work. He also attended, in an instructor's role, at least one of the weekly lectures and attended the weekly staff meeting of the chemistry department. He spent four class hours a week with his students.

There was no prescribed time or place where the appellant was to perform his preparation for classes. However, as a candidate for a doctorate he was assigned a desk in the Burnside Laboratory, a university building, and there he did research work on his thesis.

The appellant testified that on the day of his accident, January 1, 1967, he was seated at his desk in the Burnside Laboratory preparing questions for his students who were to return shortly from their Christmas vacation. Hearing a noise he turned in his chair, and as he did so he heard "something snap" in his back. Thereafter he experienced pain, tended to lean to one side when standing and had difficulty in walking.

That evening, the appellant testified, his wife called at the Carle Clinic at the University and was given a sedative for the appellant. The next day, he stated, he was not improved and he returned to the clinic where he was given more medication. On January second or third, he notified his supervisor in the chemistry department of his accident and requested that a replacement be obtained to meet with his next class. The appellant was able to proctor an hour's examination later that week.

The pain persisted and about a week later he reported to the University Health Center for treatment. After receiving some out-patient treatment at the Health Center he was hospitalized and underwent surgery for a ruptured intervertebral disc.

The deposition of the appellant's medical witness, Dr. Robert Mussey, who performed the surgery, shows that Dr. Mussey was of the opinion that the rupture or herniation of the disc occurred at the time the appellant felt pain after turning in his chair on January 1, 1967. Dr. Mussey also stated that based on the appellant's medical history, it was reasonable to conclude that the affected disc had degenerated to such a degree prior to the occurrence that normal movement would have caused it to protrude or rupture.

No witnesses were called by the appellee at the hearing before the arbitrator but it did introduce a university accidental injury report form, which had been completed by the appellant when he visited the University Health Center on

January 11, 1967. In this report he had declared that his status at the time of the accident was that of a student; that his supervisor or instructor at the time of the injury was Dr. K. A. Narayan, who was his supervisor in his graduate studies; and that the place of the accident was the Burnside Research Laboratory and that he was engaged in research at the time of the occurrence. However, on redirect examination the appellant testified that he considered the preparation of examination questions to be research. The appellant further testified that he always considered himself a student even though he had a dual status; and that Dr. Narayan had been his general adviser all of the time he had been at the University.

The arbitrator found that the appellant's injury arose out of and in the course of his employment and accordingly entered an award of compensation. The Industrial Commission confirmed the award, but on *certiorari* the circuit court set it aside on the ground that the evidence was, as a matter of law, insufficient to establish that the appellant's injury arose out of his employment.

Asking that we reverse the judgment of the circuit court, the appellant first argues that section 19 f(1) of the Workmen's Compensation Act (Ill. Rev. Stat. 1967, ch. 48, par. 138.19f(1)) prohibits judicial review of the decision of the Industrial Commission in cases involving the Board of Trustees of the University of Illinois. Section 19f(1) provides in part: "Except in cases of claims against the State of Illinois, in which case the decision of the Commission shall not be subject to judicial review, the Circuit Court of the county where any of the parties defendant may be found, or if none of the parties defendant can be found in this State then the Circuit Court of the county where the accident occurred, shall by writ of certiorari to the Commission have power to review all questions of law and fact presented by such record." It is the appellant's position that historically and conceptually the University of Illinois has

been considered to be part of the State of Illinois and thus section 19f(1) must be read as including the Board of Trustees of the University of Illinois. We cannot accept the appellant's position.

The basis for the exception in section 19f(1) of the Workmen's Compensation Act appears to be section 26 of article IV of the Illinois constitution which provides: "The State of Illinois shall never be made defendant in any court of law or equity." Since the Board of Trustees of the University has not been specifically included in quoted section 19f(1) of the Act, the Board of Trustees can be considered as comprehended in the statute only if the Board is such an integral part of the State that we must deem that the constitutional prohibition also applied to the Board.

The enabling act of the University in part provides that the Board of Trustees shall "be a body corporate and politic * * * shall have perpetual succession, have power to contract and be contracted with, to sue and be sued, provided that any suit against the Board based upon a claim sounding in tort must be filed in the Court of Claims [this provision was added by amendment approved August 26, 1967], to plead and be impleaded, to acquire, hold, and convey real and personal property; * * *." (Ill. Rev. Stat. 1967, ch. 144, par. 22.) In *University of Illinois* v. *Burner,* 175 Ill. 307, this court held that the enabling act authorized the University to be sued as any public corporation might be sued and that such authorization contravened no public policy. Then, in *People* v. *Barrett,* 382 Ill. 321, it was held that the Board of Trustees, as a corporation, was distinct and separate from the State, and, as such, the Board could employ private counsel to represent it and was not required to accept the Attorney General as its legal adviser. In *Barrett* the court stated that: "It [the Board] is a public corporation, created for the specific purpose of the operation and administration of the university. As such, it may exercise all corporate powers necessary to perform the functions for

which it was created. It is vested with exclusive power to conduct and manage the business affairs of the university. It may employ professors, teachers and other employees, over whose employment, services or activities, the State has no control. The State may, and does, biennially, in its appropriations for expenses to be incurred, designate the number, classification and rate of compensation of employees to be paid from funds belonging to the State. In its internal corporate affairs the State has no voice except indirectly by curtailing its appropriations or restricting the classification of employees and the purposes for which appropriations may be used. This the State has constantly done. In contracting with employees or others its powers are unlimited, except by the statute and by the classification and provisions found in the biennium appropriations. As to all matters incident to, or arising out of, the exercise of its corporate functions, it may contract and be contracted with, sue and be sued, plead and be impleaded, and it may exercise any other necessary or incidental powers in the furtherance of its corporate purposes. As to all such matters the State has no control over it, except indirectly, as above noted. * * * In the sense that it is a department or branch of the State government, the University of Illinois is not an agency or instrumentality of the State. It is a separate corporate entity, which functions as a public corporation. It is not the duty of the Attorney General to represent either the corporation or the trustees, by virtue of his office, as chief law officer of State. He has no right to do so. Both the university as a public corporation and its trustees are entitled to select their own legal counsel and advisor and to be represented in all suits brought by or against them by counsel of their own choice." 382 Ill. 321, 342, 347; see also *University of Illinois* v. *Bruner,* 175 Ill. 307.

Clearly the Board of Trustees is an entity independent of the State in its operation and administration of the university. It cannot be considered to be within the immunity

given by section 26 of article IV of the constitution. *Cf. Baro* v. *Murphy,* 32 Ill.2d 453, 463; *People ex rel. Coutrakon* v. *Sohr,* 9 Ill.2d 539, 551; and *People* v. *Toll Highway Com.,* 3 Ill.2d 218, 223, 227.

Proceedings under the Workmen's Compensation Act are strictly statutory and are not related to common-law tort claims, such proceedings being intended to be in lieu of such claims in employer-employee situations. (See, *American Steel Foundries* v. *Industrial Com.,* 361 Ill. 582, 586, and see 101 A.L.R. 1405.) We observe no reason to distinguish the Board under the Workmen's Compensation Act from other public bodies or entities, such as counties, towns, cities and villages, whose right to judicial review of Industrial Commission decisions is unquestioned. Accordingly, we hold that section 19f(1) of the Workmen's Compensation Act does not prevent the Board of Trustees from seeking judicial review of the decision of the Industrial Commission.

The appellant next contends that even if the Board of Trustees is not barred from securing a judicial review of the decision of the Industrial Commission by section 19f(1), the circuit court erred in setting aside the award of the Commission because it was not contrary to the manifest weight of the evidence. It is argued that the evidence clearly establishes that appellant was "in the course of" his employment as an instructor at the time of the accident and that his injuries here "arose out of" that employment. Because of the view we take of the evidence it is unnecessary for us to consider whether the appellant was in the course of his employment when he was injured.

In *Illinois Bell Telephone Co.* v. *Industrial Com.,* 35 Ill.2d 474, 477, we observed: "The Workmen's Compensation Act requires that an accidental injury or death, to be compensable, must not only be sustained in the course of the employment but must also arise out of it. It must be of such character that it may be seen to have had its origin in the nature of, or have been incidental to, the employment, or it

must have been the result of a risk to which, by reason of employment, the injured employee was exposed to a greater degree than if he had not been so employed."

Thus, it is not sufficient that an employee be at his place of work when the accidental injury is sustained to permit recovery but there must be a further showing that the injury was due to some cause connected with, or incidental to the employment, rather than to a cause completely unrelated to the employment. (*Brewster Motor Co.* v. *Industrial Com.,* 36 Ill.2d 443, 449; *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 329.) It is not necessary that the employee show the employment was the sole causative factor in his injury but he must show that it was a causative factor in the injury. (*Republic Steel Corp.* v. *Industrial Com.,* 26 Ill.2d 32, 45.) The burden of proof is on a claimant to establish the elements of his right to compensation, and unless the evidence considered in its entirety supports a finding that the injury resulted from a cause connected with the employment there is no right to recover. *Revere Paint & Varnish Corp.* v. *Industrial Com.,* 41 Ill.2d 59.

It is primarily the function of the Commission to determine such issues of fact, but if upon a consideration of all the evidence and circumstances it appears that the finding is contrary to the manifest weight of the evidence the award must be set aside. (See *Revere Paint & Varnish Corp.* v. *Industrial Com.,* 41 Ill.2d 59, 63; *State House Inn* v. *Industrial Com.,* 32 Ill.2d 160, 164; *Corn Products Refining Co.* v. *Industrial Com.,* 6 Ill.2d 439, 442, 443.) Considering the entire record we believe that the finding of the Industrial Commission was, as judged by the circuit court, contrary to the manifest weight of the evidence.

As we have stated, there must be a showing that an injury, to be considered compensable, was due to a cause connected with the employment or incidental to it. There is no evidence here of a causal connection between the appellant's employment and the injury. The appellant simply turned in

his chair and suffered the injury. There was no suggestion that the chair was defective or unusual in any way. The medical evidence was that because of its degenerated condition any simple and normal activity would have caused the appellant's disc to rupture. The injury was not caused by a risk incidental to the employment. *Quarant* v. *Industrial Com.*, 38 Ill.2d 490, 491.

Therefore, we affirm the judgment of the circuit court of Champaign County.

*Judgment affirmed.*